Milton B. Page and Ruth I. Page v. Commissioner.
Page v. Commissioner
Docket Nos. 25850, 25851.
United States Tax Court
1952 Tax Ct. Memo LEXIS 304; 11 T.C.M. (CCH) 201; T.C.M. (RIA) 52058; March 5, 1952
*304 1. Petitioner paid $43,500 in 1939 for a 14 1/2 per cent interest in the "bank-roll" and profits of a gambling venture. The venture ceased operations in August 1939 after distributing $56,892.94 to petitioner. Held, the $43,500 was returned to petitioner as part of the larger amount, constituted a return of capital, and was not taxable to him. 2. Claimed deductions for certain fees and expenses paid on behalf of the venture held disallowed. Anthony Cornero Stralla, 9 T.C. 801 followed. J. E. Simpson, Esq., for the petitioners. Earl C. Crouter, Esq., and William P. Flynn, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: In these consolidated proceedings respondent has determined deficiencies in income tax for the year 1939 of $4,776.82 against each petitioner. The questions presented are: (1) whether each petitioner is entitled to one-half of a claimed deduction of $43,500 as a return of capital or as an ordinary business or wagering loss; and (2) whether certain legal fees, expenses, and other payments made on behalf of a gambling venture to which Milton B. Page was a party are allowable as *305 deductions from gross income. A stipulation of facts has been filed. Included therein are the facts found by this Court in . It also has been stipulated that the official reporter's transcript of testimony and proceedings in that case, including two depositions filed therein, shall be introduced in evidence here and that the testimony therein shall be evidence here with certain exceptions which need not be detailed. Findings of Fact The stipulated facts are so found and are incorporated herein by reference. The petitioners are husband and wife, residing at Los Angeles, California. All of the income involved was community income and each petitioner filed a separate income tax return for 1939 with the collector of internal revenue for the sixth district of California on a community property basis. During 1939 petitioner Milton B. Page was a gambler. About April 24, 1939, Milton became a joint venturer or partner in the group known as Rex Operators which was conducting gambling operations on the gambling ship Rex off the California coast. He obtained his interest in the venture by paying to Rex Operators the sum of $43,500 for *306 which he received a 14 1/2 per cent interest in the then "bank-roll" of the operation and 14 1/2 per cent of any gains of Rex Operators from gambling operations. In addition, Milton was to receive $50 per day for each day he worked on the Rex. Milton paid $3,000 for each one per cent interest in the operation. The operating bank roll of Rex Operators was used as a fund for betting against the gambling patrons on board the Rex. Milton worked aboard the Rex for a total of 98 days prior to August 1, 1939, and received therefor from Rex Operators the sum of $4,900 as wages After April 24, 1939, distributions were made from the bank roll and earnings of Rex Operators to those interested in the venture. During 1939 petitioners received from Rex Operators a total of $56,892.94 which included the $4,900 paid as wages to Milton, as well as the $43,500 which Milton had originally paid for his interest in the venture. Rex Operators ceased business on August 1, 1939 as a result of court action. Operations on the Rex were never resumed thereafter. By the end of October 1939 all of the profits of Rex Operators had been distributed, except an amount regarded as sufficient to pay remaining *307 charges. Milton never received anything from Rex Operators in 1939 other than the amounts set out above and thereafter he considered and treated the venture as a "dead issue". For the year 1939 each of the petitioners returned one-half of the sum of $56,892.94 as income and deducted therefrom one-half of the $43,500 which Milton had paid into the bank roll and which had been received back by petitioners as part of the $56,892.94. The difference between the $56,892.94 and $43,500, to-wit, $13,392.94, represents the net gain to petitioners from the gambling operations of Rex Operators, including the $4,900 wages. No evidence other than that which was before this Court in , was presented at the hearing with reference to the claimed deductions of Rex Operators, the disallowance of which resulted in a corresponding increase of Milton's distributive share of the income of Rex Operators. Opinion The first issue strikes us as being one almost wholly of fact. Did Milton, or did he not, pay over $43,500 for a 14 1/2 per cent interest in the bank roll and profits of Rex Operators, and did he, or did he not, receive back the $43,500 as part of *308 the $56,892.94 paid to him by Rex Operators? Respondent urges us to answer these questions in the negative on the ground that the only evidence presented was the uncorroborated testimony of petitioner which respondent characterizes as "self-serving" "vague", "evasive", and "indefinite". Because of the nature of petitioner's claim and the business in which he was engaged the Court gave special and careful attention to his demeanor on the stand and has carefully studied the transcript of his testimony. We think that petitioner honestly and to the best of his ability answered the questions put to him. While some of the detail which would be necessary easily to dispose of the issue is lacking due to lapse of time and failure to keep written records, yet we are convinced that petitioner is worthy of belief. His story is credible and does not contain those contradictions and inherent inconsistencies which called for different treatment in , affirmed . Nor is this a case based on estimates made by a witness, unsupported by other facts. Here the evidence is direct as to the amounts involved and the use made of the *309 money. Respondent produced no witnesses and cross examination left petitioner's testimony unshaken in its essentials. We conclude that the $43,500 was put into the gambling venture by Milton and returned to petitioners as part of the moneys distributed by Rex Operators during 1939. It was not income to petitioners and not taxable to them. On the second issue, no evidence not before this Court in the case of , was introduced at this hearing. The facts as found in that case are stipulated here. The issue as to the claimed deductions is the same. We see no alternative but to follow our decision there, which was court reviewed, and accordingly hold against petitioners on this issue. Decision will be entered under Rule 50.